| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |

| | |
|---|---|
| Randall L. Little, *et al.*, § § | |
| Plaintiffs, § § | |
| *versus* § § | Civil Action H-07-871 |
| Shell Exploration & § Production Company, *et al.*, § § | |
| Defendants. § | |

# Opinion on Summary Judgment

1. *Introduction.*

   Two government auditors say that they independently uncovered a company's plan to underpay royalties owed to the United States. The company says that there was nothing to uncover because its method for calculating royalties was legal and widely known. Because the auditors have only synthesized publicly available information, the company will prevail.

2. *Background.*

   Randall Little and Joel Arnold sued Shell Exploration & Production Company, Shell Deepwater Development Systems, Inc., and Shell Offshore, Inc., because they say that Shell defrauded the United States.

   Little and Arnold worked as auditors for the Minerals Management Service – formerly a branch of the Department of the Interior. Their job was to find accounting irregularities. As part of their work, they audited twelve of Shell's mineral leases in the Gulf of Mexico.

   As compensation for its leases, Shell pays royalties to the United States. Subject to dense regulations, Shell may deduct its cost to "transport" oil from these royalties. Arnold and Little say that Shell: (1) deducted the cost to "gather" oil as though it was transportation; and (2) deducted the cost to upgrade its platforms to store transportation equipment.

   Arnold and Little reported these deductions as fraud to their supervisors. The agency decided Shell's deductions were legal, but the auditors sued anyway.

In 2011, this court dismissed their claims, holding that government auditors cannot sue as "private persons" under the False Claims Act. On appeal, that part of this court's decision was reversed. On remand, the remaining issue is whether this suit is barred because the claims were based on public information.

3.  *False Claims.*

The False Claims Act allows the United States to recover from people who defraud it.[1] Little and Arnold are suing on behalf of the public because they may keep up to thirty percent of the country's recovery – an incentive for people to protect the government against fraud.[2]

4.  *Public Disclosures.*

A person may not, however, sue based on public information.[3] This broad exclusion disallows suits about schemes described in the press, court cases, and disclosures under the Freedom of Information Act – among other things.[4] The United States does not want people harassing its contractors or taking thirty percent of its money based on a known fraud.

Because Little and Arnold could have produced the substance of their complaint by synthesizing public disclosures, their claims will be dismissed.[5] The statute does not require a complete overlap between the disclosure and the complaint for the claim to be barred; the court does not have jurisdiction if it is "even partly based upon public allegations."[6]

---

[1] 31 U.S.C. § 3729(a) (2012).

[2] 31 U.S.C. § 3730(d)(2) (2012).

[3] 31 U.S.C. § 3730(4)(A) (2012).

[4] Schindler Elevator Corp. v. United States *ex rel.* Kirk, 131 S.Ct. 1885, 1891 (2011).

[5] United States *ex rel.* Jamison v. McKesson Corp., 649 F.3d 322, 331 (5th Cir. 2012).

[6] United States *ex rel.* Reagon v. E. Tex. Med. Ctr. Reg'l Healthcare Sys., 384 F.3d 168, 176 (5th Cir. 2004).

Arnold and Little say that have identified twelve leases, a specific period, and Shell's practice of taking transportation deductions. Three categories of public data capture each of these details: (1) Shell publicly commented about its deductions to the Minerals Management Service and debated these regulations at conferences; (2) past administrative and court decisions disclosed Shell's deductions; and (3) the government was auditing Shell before this lawsuit began because of potential underpaid royalties.

5. *Public debate.*

In 1998, the United States elicited comments to clarify the distinction between gathering and transportation. Shell told the Minerals Management Service that it should be able to deduct "gathering" – the cost of moving oil to a central accumulation or treatment station – as transportation. It also attended conferences about classifying gathering and transportation.

Arnold and Little say that debates before the agency's ruling did not disclose Shell's later decision to deduct its gathering as transportation. When considered in combination with the other disclosures, it did, however, alert the public that Shell was in a position to deduct these costs and that it wanted to deduct them. This disclosure alone would have allowed anybody to write Arnold and Little's speculative petition, hoping discovery would confirm their hunch.

6. *Administrative disclosure.*

Shell has produced agency reports that disclose the practice that Arnold and Little pleaded. In 2002, the Minerals Management Service disclosed reports showing that Shell told the United States that it considered gathering transportation. The same papers also clarified the agency's position on what constitutes transportation.

In 1997, the Interior Board of Land Appeals – an administrative body that hears appeals from the Minerals Management Service – allowed Shell to deduct the cost of upgrading its platform to store transportation equipment. Shell then told the agency that it intended to deduct these capital expenses.

Arnold and Little say that this did not disclose Shell's deduction of gathering expenses. This was not the only part of the practice that Arnold and Little pleaded. They also said that Shell was improperly deducting capital costs to improve its platforms. Because of the 1997 appeal, that practice was entirely within the public domain.

7.  *Judicial disclosure.*

Three previous cases publicize Shell's deduction of gathering costs as transportation.[7] In 1997, it was accused of wrongfully deducting its cost to transport gas from leases in the Gulf of Mexico. Although this case concerned mis-measurement of gas, it did alert the public about Shell's transportation deductions.

In a 2003 case, the relator accused Shell of fraudulently deducting transportation costs. Arnold and Little say that this only concerned costs incurred before 1988. The 2003 petition describes, however, the vast majority of the scheme to which Arnold and Little object. Although it concerned different leases, the 2003 case disclosed the mechanics of Shell's general practice.[8]

In 2001, Shell settled a case about underpaid royalties from leases in the Gulf of Mexico. The court made the settlement agreement part of the record, which preserved for later litigation the exact scheme that Arnold and Little pleaded. This disclosed the existence of potential claims about Shell's calculation of transportation expenses for oil from the Gulf of Mexico.

8.  *Government Investigation.*

Between 2002 and 2005 – the years directly preceding the beginning of this lawsuit – the United States investigated Shell for taking the potentially improper deductions that Arnold and Little pleaded. The auditors say that this is irrelevant because it was not a public investigation. It does, however, show that the other public disclosures – from lawsuits, administrative investigations, and public debate – were sufficient to alert the government about the possibility of fraud.[9]

Arnold and Little object to each public disclosure separately. Even if their objections were persuasive in isolation, the disclosures considered together are sufficient to bar this lawsuit. The public and the government knew that Shell was in a position to deduct these costs,

---

[7] Wright v. Chevron (No. 5:03-cv-264); United States ex rel. Johnson v. Shell (9:96-cv-66); Grynberg v. Shell Oil Co. (No. 2:97-cv-2357).

[8] United States *ex rel.* Fine v. Sandia Corp., 70 F.3d 568, 571 (10th Cir. 1995) (disclosures need only "sufficiently alert the government to the likelihood" of fraud).

[9] United States *ex rel.* Branch Consultants, LLC v. Allstate Ins. Co., 668 F. Supp. 2d 780, 795

had deducted them in the past, wanted to deduct them again, and was likely deducting them in 2006 and 2007.

9. *Conclusion.*

Because Joel F. Arnold and Randall L. Little's complaint could have been easily produced by synthesizing the public descriptions of the scheme, they will take nothing from Shell Exploration & Production Company, Shell Deepwater Development Systems, Inc., and Shell Offshore, Inc.

Signed on March 5, 2014, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge